And we have the attorneys here. I'm sorry, I'm not sure that I can read your writing. Excuse me? Lynn Batt with a B. Okay. And Ms. Buckley. Good morning to you both. And the case is in re Marriage of Field. Ms. Lynn Batt, when you are prepared to proceed. And there's cross appeal in this as well, correct? That's correct. Okay. You may begin when you're ready. May it please the court. Counsel. My name is Jamie Lynn Batt and I represent the appellant and the cross appellee in this matter, Dennis Field. The subject of our appeal is whether the trial court erred by ordering Dennis to pay his ex-wife, Della Field, an additional $6,500 as and for alleged household expenses and whether the trial court abused its discretion in ordering Dennis to contribute to Della's attorneys fees. The issues of these fees were specifically appealing based on whether the court erred in ordering Dennis to contribute to the fees incurred prior to September 30, 2013, the date of entry of final judgment in this matter, even though no petition for fees was filed or requested pursuant to Section 503J of the IMDMA. I wanted to stop you here for a minute and ask a question. Is the settlement agreement part of the record? Yes, Your Honor. Because as everyone knows, attorney fees can be considered as part of the entire agreement settlement and at this point in the briefs we have no idea what essentially the entire settlement consisted of. Well, the initial settlement was entered with the court by oral prove-up on January 11, 2013. That's where the parties both outlined the terms of the agreement, the major aspects of it, and specifically reserved three issues. One was what was then considered custody of the minor children once Dennis moved out of the party's residence. The tax, how the tax exemptions for the minor children would be allocated and... Well, what I'm referencing is we don't know what the asset position was and I'm just wondering if that will be apparent to us when we pursue the record. Yes, Your Honor. Okay. And you can go ahead then with your argument. Well, and just to clarify, the marital settlement agreement was, it is part of the record and it was entered on October, sorry, September 30, 2013, I believe. That's when, yes, September 30, 2013, that's when the final judgment was also entered. So we believe that the court erred in ordering Dennis to contribute to those attorney's fees incurred by DELA prior to the entry of that marital settlement agreement and judgment of dissolution of marriage that were entered on the same date. And also for any fees that were incurred by DELA after September 30, 2013, that the court ordered Dennis to contribute to, we believe that the court erred where it, where no testimony or evidence was presented as to the reasonableness or necessity of those fees pursuant to Section 508 of the Illinois Marriage and Dissolution of Marriage Act. And that's kind of what I'm wondering about when you think of the entire assets because from what was in the brief, he makes about five times what she makes, four to five times. I think the year prior to the dissolution going, or it was either, sorry, I believe for 2013, his gross income was in the $90,000 range and hers was in the $30,000 range. Specifically during that period of time from January through May 30, 2013, Dennis was still residing in the household with DELA and the minor children and was, and paid over $35,000 towards the household expenses. Once he moved out, he also then paid child support retroactive to January 2013 every month at the rate of $1,300 a month. So there was substantial support and assistance received by DELA for household expenses and for the children's expenses. And that's part of the issue with deciding attorney's fees. Then three years later, the court didn't really consider, didn't really address the financial settlement of the assets, the division of liabilities, and the support that was received by DELA during that period of time being September 2013 when judgment was entered. Going to the $6,500 that were ordered to be paid for DELA's alleged household expenses, the party's initial agreement on January 13, 2013 was again put on the record, and both parties agreed and orally affirmed to the court that they understood this, what was put on the record was the entire agreement, that nothing would be modified. When the marital settlement agreement was entered in September, it outlined the agreement of the parties for that period of time that they resided together wherein Dennis was to contribute to the household expenses. The living expenses that were outlined in the marital settlement agreement were utility bills, cell phone bills, mortgage payments, taxes, home insurance, auto insurance. And while it wasn't necessarily an exhaustive list, it does go to the nature of the expenses that would constitute household expenses. When you say it wasn't an exhaustive list, wasn't it kind of an open-ended statement that he would pay for household expenses? I believe the terminology used in the marital settlement agreement was household expenses including utility. Right, that's what I'm saying. Correct. It itemized some, but it said including meaning that there could be others. Right, and we agree that there could have been other expenses, and I believe other expenses were paid for. The issue goes into the nature of those expenses and then what was then claimed by Della to be reimbursed during the same time period. Della alleges in her brief that Dennis got the benefit of the bargain by being able to live in the house for nearly five months, and then after that he decided to complain about what would constitute those expenses. She brings up bills for her children from a prior marriage. Well, the agreement of the parties for Dennis to pay those household bills specifically stated in the MSA that it was in lieu of child support. Dennis would not owe a child support obligation for Della's children of a prior marriage. He would only owe a child support obligation for the two minor children of their marriage. Della also brought up the June house payment. Well, the MSA clearly states that this agreement is in effect so long as Dennis is living in the residence. He moved out May 30th and then the following month began paying the $1,300 a month in child support. Also paid it retroactively to January for each month he resided in the house, in addition to the household expenses that he paid. Della also brought up in her brief claims for art, birthday party supplies, traffic tickets, stationery, and new cell phones. Again, those would be superfluous luxuries that are not within the same nature of the list that is outlined in the Maryland-Solomon agreement. Well, I would admit that it's not an exhaustive list. It does, again, speak to the nature of what the bargain was and what the agreement was between the parties. Are you saying that the court did allow her reimbursement for the luxury items that you just talked about? The court specifically stated that those were luxury items. Right, and not included in household. And so it didn't grant Della's request for the additional $19,000 that she wanted for that time period. However, the court did go back and order Dennis to pay that $6,500, which based off of what he paid during that time frame, every affidavit, every testimony, sorry, every affidavit and all the testimony that was offered by Della had the household expenses far below the $35,000 that Dennis paid from January through May 30th. And so the court didn't state what $6,500 was specifically for, but given that Della's request for additional expense or for reimbursement for additional expenses was based off of those luxury items, that's the only connection that we could get from that. But you're presuming that? Also, at the time that the marital settlement agreement was entered was, again, September 30th, 2013. Dennis had already moved out of the residence. He'd moved out May 30th. So at the point that the marital settlement agreement was entered, and there were, if you take a look at it, there were items marked out and additional items put into the marital settlement agreement by hand by the parties. So at that point, if Della knew that these additional expenses existed that needed to be reimbursed, it could have been added to the list of the household expenses in the marital settlement agreement. So the agreement between the parties as for household expenses was, again, in the nature of those mortgage payments, insurance payments, things like that. In addition to the dispute between the parties as to what should be categorized as household expenses, there's also dispute as to exactly which deposits into the parties' joint account by Dennis should be credited to him for payment of the household expenses during that temporary time. The parties do agree that Dennis deposited about $99,000 in the parties' joint account on November 12th, 2012. And the remaining balance in that joint account was $4,000 as of December 31st, 2012. Della also agreed and the parties agreed that Dennis deposited a total of $35,773.69 into the joint account between January 1st, 2013 and May 31st, 2013. As I was referencing earlier, Della's August 2013 financial affidavit stated that the monthly household expenses was $5,700. And that's excluding the $2,000 a month in contributions she wanted to make to retirement and college saving plans and the $250 a month in charitable giving that she also claimed on the affidavit. So $5,700 a month in household expenses for the five months, a total of $28,500. Again, Dennis far exceeded that by depositing over $35,000 into the account during that time period. I'm sorry, what about the agreement to pay for, I guess, part of the tuition for the stepdaughter? So in the marital settlement agreement, I think it estimated those expenses to be about $5,000. So if we deduct $5,000 from what Dennis put into the account, we're still at $30,773. That's still far more than the $28,500 that Della claimed as household expenses during that time period. I think there was either testimony or evidence that $6,100 was actually used for Della's daughter's college expenses. Again, even if you deduct $6,100 from the $35,000 figure, you're still far above the $28,500. So the household expenses essentially should have been satisfied at that point. Della also points out many times in her brief to an email exchange between the parties, specifically an email from her to Dennis on January 23, 2013, in which she wrote down the household expenses. In that email, she estimates the expenses to be about $6,148. However, the specific language of that email states to Dennis that that estimate is including Dennis's expenses. So the $6,148 a month, again, it was an estimate, and Della's now saying that her expenses were actually higher than that. I'm sorry, so it's clear from that email, and I guess I haven't read that. I will, that it includes Dennis's expenses. What the email specifically states is these are the approximate amounts of our monthly expenses, including yours. Okay. So, and again, these expenses are house payments, daycare, preschool, dance class, auto insurance. Okay, not his individual expenses or his personal. Well, it includes clothes and entertainment, groceries, gas, medical. So that's where I think there definitely was movement. Obviously, Dennis is covering his own expenses plus Della's and the children's. So the, like I said, the $35,000 figure would satisfy those expenses, and then he's still responsible for his own. Della, the next financial opportunity that Della submitted was in 2014, where she claimed her household expenses came to $6,000 a month. Again, 6 times 5 is 30, 30,000. Dennis exceeded that in depositing over $35,000 into the account at that time. But if you put the 6,000 for the tuition that he agreed to, wouldn't that be about it? I think there may, at that point, have been potentially a deficit. I don't think that we would have accepted all of the expenses in the 2014 financial affidavit either as household expenses. But it wouldn't have been a difference of $6,500, which is what the court ordered Dennis to reimburse her for. So we think that figure was essentially Dennis should not have had to reimburse her for any household expenses, and that figure was far beyond any calculations that we can really come to, given the affidavits that Della herself submitted and the testimony that she gave as well in the hearings on this matter. Thank you. You'll have the opportunity for rebuttal. Ms. Buckley? Thank you. Good morning, Justices. My name is Kathleen Buckley, and I am from the law firm of Taliana Buckley in Edwardsville, Illinois, and I am here representing Della Field, the Eppley and Cross appellant in this case. We also appealed from Judge Slemmer's order with regards to the same issues that Mr. Field appealed from. That would be the issues of the propriety of the award of the household expenses as well as the issues of the payment of attorney fees. I do want to address one issue, though, because I don't know whether it will be brought up on rebuttal or not. In the briefs filed by Mr. Field, in his reply brief, he did bring up the issue of the fact that he believes that perhaps the marital settlement agreement should be considered invalid by this court or void as a result of the parties not reaching a meeting of the minds. And in our reply brief, we made it fairly clear that we believe that that is an argument that has been weighed by the appellant. It's not anything that was brought up prior to the reply brief. It's never been an argument that was raised in the trial court. There's never been a motion. There were no post-trial motions that were filed? Certainly. There were post-trial motions. It was not in that? It was not in the post-trial motion, absolutely not. And, you know, with respect to the fact that these terms with regards to the attorney fees and the household expenses remained loose ends at the time that the marital settlement agreement was entered, we have two court orders. We have a court order on June 10th of 2013 that's at C-110, which was entered by Judge Flack, who was the second judge we had on this case. And Judge Flack makes it clear that there are issues with respect to attorney's fees, with respect to household expenses, tax exemptions that remain pending before the court. And then the day that the case was finalized, on September 30th of 2013, there's a handwritten order written by Mr. Fields' attorney where the issues of attorney fees, household expenses are specifically reserved. So it was very clear when the separation agreement got entered and approved by the court and signed by both parties after a nine-month delay. So both parties were anxious at this point to just get something on paper, because from the time it being put on the record in January until September, it was a long, arduous process for both of them. It was very clear that these issues remained outstanding. So I don't think you can... Did Mr. Fields represent himself as an attorney? So the interesting background of this case is it started off with an order of protection filed by Mrs. Field in January of 2013. Mr. Field showed up in court representing himself on that order of protection case. On January 9th of 2013, there was an argument scheduled because the emergency order of protection was not granted. And on that date, Mr. Field requested a continuance in order to seek counsel. So Judge Jensen, who was the first judge in the case, did grant the continuance, but only for two days. And in that period of time, he told Mr. Field he was not allowed to live in the home. So between January 9th and January 11th, he was out of the home. January 11th, he came to court with Ms. Desai's partner, Chuck Courtney. So he was represented from all the negotiations and everything in regards to this case from January 11th forward. But is he an attorney? Yes, he is an attorney. I apologize, Your Honor. He is an attorney. And essentially, I just wanted to address that issue of the validity in case it came up, since I may not get a rebuttal. I'm not quite sure how that works, since I'm a cross-appellant also. No, I don't think it was broken down that way. It didn't look like it was. That's what I thought. Unless you want to take part of what you have. That's okay. I wanted to make sure I just got to address that issue off the top. So moving to the household expenses issue, which is a very hotly disputed issue, as you heard. The background that I gave you about the Order of Protection, Mr. Field being out of the house, and Mr. Field, in the record, you will see there are e-mails that he sent Mrs. Field on January 10th of 2013 while he is out of the house, saying, I will pay our expenses if you allow me to live in the house until my birthday. His birthday was June 5th, I believe. He ended up moving out shortly before his birthday. And the parties, via e-mail, e-mailed back and forth with regards to him being allowed to be back in the house for agreeing to withdraw the petition for Order of Protection. So there was a great deal of desperation on his part to be able to come back into the house because he wanted a place to live and didn't have any other place that he felt that he could go. So he offered to pay expenses. So that is the reason why these expenses that Mrs. Field has submitted, in her mind, she believes she's entitled to reimbursement for every single one of them. This man is an attorney. Della works as a bookkeeper at a church. They lived a nice lifestyle. For it to be called a luxury for them to put picture frames on art that their children did, or paying traffic tickets, or purchasing cell phones for children, those are not luxuries for the type of lifestyle that this family was leading. All of the expenses that Della asked for reimbursement for were legitimate monthly expenses that were being incurred during the period of time that Mr. Field was living in the house. And so there is no reason that we can think of that all of those expenses would not have been awarded. There may be an issue about whether he was in contempt for not paying them. I acknowledge that because we are asking for parole evidence to be considered when determining what the meaning of the household expenses are. But even if there was not contempt, this Court certainly can award expenses, can award some of those expenses back to Mrs. Field. So there are various exhibits that show exactly what expenses she is claiming. When they tell you that her financial affidavits say that household expenses were $5,700 a month, they're knocking off a substantial amount of the expenses that Mrs. Field had as part of the household, which is saving for retirement. She's a woman who's in her late 40s, early 50s, and saving for retirement is something that people do when they get to be that age. So was her income, do you agree that what her income was and what his income was? So I said about in my brief, Your Honor, for the year 2012, Mr. Field earned approximately $90,000 and she earned approximately $30,000, $35,000. That was a very low year for him. In addition to that income, the way that his law firm compensated him, his law firm also automatically paid 10% of his annual salary into a retirement account that didn't show up on his paycheck stubs, and he admits that he was always getting anywhere between $10,000 and $14,000 a year in expense reimbursement. And there's no maintenance award in this case? There was no maintenance award, and I think that's really important to consider when trying to determine, especially the issue of attorney fees, which I haven't gotten to yet, but I think also this whole issue of household expenses. If you look at it from the prism of what was happening at that time and you look at the expenses that she has submitted and you consider the lifestyle that a family would be living, they have two children together, Mr. Field admits in his testimony that Della's children from her prior marriage, Shay and I'm forgetting the other child's name, but Claire, who was the one he paid tuition for, he admits in his testimony that they were members of a family, they were part of the household. There are minute expenses related to those children with regards to the expenses that Della is asking. I think one of the boys, Shay, was still in high school. There may have been a little bit of lunch money for him, but the younger two children were in school also and they were on the lunch money account also. So if you look at what that exhibit is that sets forth her household expenses, we believe that it was a complete mistake for Judge Slemmer not to award, I believe it's $19,097 and some change with regards to those expenses. How he came up with the $6,500, I'm not certain, but if you look at the math that Mr. Field is asking you to accept, the marital settlement agreement is very clear that Mr. Field was responsible for expenses from January 11th, 2013, the date that we put the proof up on the record, through I believe it says May 31st or when he moves out. A lot of the deposits that Mr. Field is asking you to take into consideration happened before that date. He wants you to consider $4,000 that was in the account that his attorney just mentioned from a deposit that was made in November of 12th. That doesn't count. He made a deposit of around $6,000, give or take a little bit, at the beginning of 2013 prior to this agreement of the parties. It doesn't count. Justice Chapman, you correctly brought up that he agreed that he would pay for Claire's tuition, spring tuition at U of I, which was roughly $6,200. He wants to lump that into these household expense deposits. But if you take those things out, you can very clearly see that the amount that he paid would not have come close to meeting the expenses of the household the way the household had been run. And this was his idea. I completely agree. He got the benefit of the bargain. I think you look at the conduct of the parties, and you can clearly see that there was an agreement here. And once he gets out of the house and we get our separation agreement entered, suddenly he wants to complain about the expenses. He knew that complaint existed. Tell me about the attorney fees, because, you know, I don't have a whole picture, which you really need to have to determine what's fair. So what happened in this case is we did a hearing in May of 2014. And when we did that hearing in May of 2014, I had filed a petition for attorney's fees with regards to the fees that were incurred prior to the judgment of dissolution. The date after that hearing, my client learned that there may have been some misrepresentations by Mr. Field with respect to what his actual income was. She knew that he had testified that day in court that he had only received X number of dollars in income so far that year, had no idea when he was going to get another paycheck, and lo and behold, as soon as he leaves court, he goes back to his office and he gets $10,000. So we filed a motion to reopen the proofs. And the main reason for reopening the proofs was the attorney fee issue, because we started to feel like perhaps we had not done a good enough job of investigating what Mr. Field's actual assets and income were. So when we did the motion to reopen proofs, and this is one of the reasons why the attorney fees are so high, I had to subpoena records from his law firm. Those were moved to be quashed. Subpoenaed records from babies moved to be quashed. Subpoenaed records relating to a house his parents were building for him moved to be quashed. I had to go to his, I had to get Judge Slemmer to allow me to look at records, ultimately got that permission with some protections to protect their clients, and was able to determine that Mr. Field had significant deferred compensation in his law firm, around $185,000 at the time that the court was to be considering what should happen with attorney's fees. In addition to that, he had neglected to reveal that he was receiving this $10,000 to $14,000 a year in the expense reimbursement, completely not reflected on his affidavit. And there were other financial issues that we discovered that showed, we believe, the court, and certainly convinced me, that what he showed as his annual income on his tax return was easily manipulatable by him, and his income had gone down the year prior to the divorce being filed. Not surprising, I'm sure the marriage was in turmoil right prior to that time. This is evidenced by the fact an order of protection is filed. And so the issue of attorney's fees is raised first with regards to the time period up to the filing of the, or the finalization of the judgment. But then another second petition for attorney's fees is filed when we do another hearing two years later, in March of 2016, because it takes that long to get through all of the financial rigmarole that I have to go through in order to find out what the actual income is here, and what the actual assets are. Because I think that's what the court has to consider when determining attorney's fees. We have that leveling the playing field statute, where my client is entitled to some type of parity in representation. And so Judge Slummer did his best, but it is our opinion, again, looking at their incomes, looking at the assets, that he committed an error. He committed a mistake by only awarding her 40 percent of her attorney's fees. And I've laid out all the math in my brief, and I apologize I don't have it off the top of my head, but if you look at what the assets are of both parties, and if you look at what the incomes are of both parties, it's very clear that Mr. Field was in a superior position to pay. It is very clear that Mrs. Field did not have assets with which to pay her own attorney's fees. And so looking at the differences in their incomes, I estimate Mr. Field is at 75 percent, Mrs. Field is at 25 percent. And so we've requested that what this court do is direct Judge Slummer to enter an order for attorney's fees for Mrs. Field getting 75 percent of her incurred attorney's fees. So that's pretty, go ahead. It seems like in the briefs there was a lot of discussion about the contempt issue. I really haven't heard a thing. Are you appealing to the fact that the judge did not find Mr. Field's in contempt? Well, yes, I am appealing that. But I have to tell you that looking at the case, do I believe that that household expense order, and when you look at that provision in the marital settlement agreement, I agree with opposing counsel that it does sort of give a laundry list of things, but if you look at the emails between the parties, it's very clear no one expected that laundry list to be 100 percent inclusive. In other words, there are going to be other things that might come up, and they certainly did come up during this period of time. So we believe Mr. Field knew exactly what he was agreeing to. His email says, I will pay our expenses. We believe you can consider that plural evidence. But nobody really defined what the expenses were. The expenses were not as well defined perhaps or defined as well as they could have been. But if you look at the background and you take into consideration what he's trying to accomplish here, and you figure that this is a person who is desperately trying to have a place to stay and is desperately trying to come up with a plan that will allow him to stay there, and you take that into consideration, and again, that's the plural evidence that I think you can consider. Okay, going back to your issue on contempt, if you believe that the language is ambiguous, I don't think you can find him in contempt. If you believe that the language is not ambiguous, then I believe that he is in contempt. And I think if you take all the facts into consideration, he knew what the language meant, and so he should be found in contempt on that issue. Thank you, Your Honor. Just to touch on a couple of things that counsel brought up in her argument. The argument in our reply brief regarding whether or not there was a contract and whether or not the Meryl Solomon agreement should be set aside completely, I would disagree with the assertion that that's a waived argument. It's not necessarily waived. It's a conclusion that this Court can make based off the clearly and now admittedly failure of both parties to have a meeting of the minds. Was this addressed in post-trial motion? I mean, we can't just consider it now because you say that it's clear from the briefs and that it's an issue. I don't think that we're necessarily raising it as an issue. I think we're more so raising it as a conclusion that can be made based off of both parties agreeing that the language is ambiguous and each party having a different understanding of that. Even with a contempt issue, a party can't be held in contempt unless the violation is clear, the language of the order was explicit and clear, and that party willfully violated that order. What would be defined as household expenses was not clear. And if the parties entering into that Meryl Solomon agreement, both not understanding what household expenses meant, then the legal conclusion that could be made is that there was no actual meeting of the minds. It was pretty clear that it included everything, including the itemized items that were laid out. Exactly, Your Honor. And that's why our argument as far as whether or not the Meryl Solomon settlement agreement should be set aside completely is more so in the alternative. Also regarding the issue of maintenance, that was in the Meryl Solomon agreement and in the oral agreement that was admitted to court through prove up completely waived by DELA. Any claim or request from Dennis to contribute via spousal support or maintenance. So that was not considered, at that point there was no award for fees, and the disagreement between the parties on the day the judgment was actually entered, there wasn't an agreement that fees would be reserved. There was, in the agreement order it specifically stated that whether or not DELA had a claim or could make a claim for fees, that argument was reserved. We still believe that there was no proper petition for contribution to fees filed prior to entry of the judgment, and the very language of the statute and the supporting case law that's in our brief mandates that a petition for fees has to be decided prior to the, sorry, in conjunction with the financial award and allocation of assets and support. Similarly to the household expenses for us now to try to, for the courts to two years later, three years later, come back and say that Dennis has to contribute to DELA's attorney's fees prior to the agreement, that changes, that modifies the agreement. And the party's intent in going into the marital settlement agreement was based off of knowing that this was the entire financial landscape, aside from a few minor, couple minor issues. If you're now trying, if you're now going to apportion a substantial attorney's fee award to him between 15 and $20,000, that then modifies the final allocation of the party's marital assets in support that, again, is what's stated in the marital settlement agreement, that it is a final allocation. But Counselor, the marital settlement agreement didn't say each party paid their own attorney's fees, correct? It did state that, but I guess the day of... It did? Well, so it initially stated that, and then the day of it actually being entered, because there was a dispute. So in September, because there was a dispute, it was marked out. And a hammering order was entered saying the parties disagree as to whether or not there can even be a claim for attorney's fees. Because at that point it had been brought up. In the oral approval, nobody mentioned attorney's fees as Della being awarded attorney's fees. So it's improper, based on the filing of the court, or based on Della's filing, to go back and award her fees prior to the final judgment, per the language of the statute and per the case law. Thank you. Thank you for your briefs and arguments. We'll take the matter under advisement, and this court will be adjourned.